IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OPTUMCARE MANAGEMENT, LLC,

    Plaintiff,

v.                                                                     No. 21-cv-00982 RB-LF

TIMOTHY GRENEMYER, D.O.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

In 2012, Timothy Grenemyer, DO, a family practitioner from New Mexico, signed a Noncompetition Agreement (NCA) with an entity called Healthcare Partners, LLC (HCP), which restricted Grenemyer's ability to practice medicine within a defined geographical area after his employment with HCP ended. OptumCare Management, LLC (Optum or OptumCare), which claims to be a successor entity to HCP, filed a lawsuit against Grenemyer in 2021, alleging that he violated the terms of the NCA. Grenemyer filed counterclaims against Optum, including tortious interference with existing contract and prospective business relations, common law unfair competition, violation of the New Mexico Antitrust Act (NMAA), and malicious abuse of process. Optum moves to dismiss the counterclaims. The Court will grant Optum's motion in part and dismiss three of the four counterclaims.

**I.**     **Factual Background**[1]

Grenemyer has practiced as a family practitioner in New Mexico for 23 years. (Doc. 20 (Answer & Countercl.) at 7 ¶ 1.) "Grenemyer originally practiced family medicine at Lovelace

---

[1] The Court recites the relevant facts as they are derived from Grenemyer's Answer to Complaint, Counterclaim and Jury Demand (Doc. 20 (Answer & Countercl.)) and resolves all factual disputes in favor of Grenemyer, the non-moving party.

1

Health System until 2003, when Ardent Health Services bought Lovelace. (*Id.* ¶¶ 2–3.) In 2007, Grenemyer and other physicians "created a physician-owned medical group known as ABQ Health Partners[,]" and Grenemyer was considered a "member" of the company. (*Id.* at 7–8 ¶¶ 4–5.) In 2012, management of ABQ Health Partners "recommended that the physician-owners of ABQ Health Partners agree to the sale of their interests to Healthcare Partners LLC [(HCP)]." (*Id.* at 8 ¶ 6.) Management of both ABQ Health Partners and HCP represented to the physician members that the sale "would result in increased revenues and increased compensation for the physicians, neither of which turned out to be true." (*Id.* ¶ 7.) Grenemyer relied on the representations and agreed to the sale. (*Id.* ¶ 8.) He did not have input on the negotiation or terms of the sale and did not sign the contract itself. (*Id.* ¶¶ 9–11.)

As part of the sale, "Grenemyer was instructed to sign" an NCA. (*Id.* ¶ 12.) He "had no bargaining power to alter its terms." (*Id.*) Grenemyer and HCP are the only named parties to the NCA. (*Id.* ¶ 14.) "The [NCA] does not provide that it can be assigned to successors or subsequent purchasers of ABQ Health Partners."[2] (*Id.* at 9 ¶ 16.) Grenemyer believes that "the ownership, management, and control of the medical group former[ly] known as ABQ Health Partners has changed at least twice since [he] signed the [NCA] with [HCP]." (*Id.* ¶ 20.) First, in 2012, DaVita Inc. acquired HCP. (*Id.* ¶ 21.) Later, in 2019, "United/Optum acquired certain components of DaVita, including ABQ Health Partners." (*Id.* ¶ 22.) Grenemyer did not consent "to any assignment of the [NCA] to DaVita or to Optum[,]" nor did he receive consideration from DaVita or "Optum for any restriction on his ability to practice medicine." (*Id.* ¶¶ 23–24.)

Between the time Grenemyer signed the NCA and the time Optum acquired DaVita, the

---

[2] Grenemyer discusses entities called ABQ Health Partners, ABQ Health Care Partners, Health Partners LLC, Healthcare Partners LLC, and Health Care Partners LLC. (*See, e.g.*, Answer & Countercl. at 3 ¶ 13, 8 ¶ 6–7.) It is unclear how these entities are different, but the Court finds it can decide this motion without requiring further clarity on the issue.

New Mexico Legislature passed legislation limiting non-compete provisions that restrict the right of physicians to practice in New Mexico. *See* N.M. Stat. Ann. § 24-1I-2. Grenemyer asserts that "Optum's business strategy is to use the [NCA] to prevent its employed physicians and their patients from having a choice to leave Optum's integrated health insurance and medical service business, thus trapping those patients and the revenues they generate within the United/Optum health system." (Answer & Countercl. at 10 ¶ 27.) He contends that Optum's business strategy "causes New Mexico physicians to relocate out-of-state[] and impairs the ability of New Mexico citizens[,]" many of whom are in areas designated as "medically underserved, . . . to obtain prompt and adequate health care." (*Id.* at 11 ¶¶ 34, 40.)

Grenemyer brings four counterclaims: Count I: tortious interference with existing contract and prospective business relations; Count II: common law unfair competition; Count III: violation of the NMAA, N.M. Stat. Ann. § 57-1-1–19; and Count IV: malicious abuse of process.

**II.     Legal Standard for Motions to Dismiss under Rule 12(b)(6)**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all the well-pleaded allegations of the [counterclaim] as true and must construe them in the light most favorable to the [counterclaimant]." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the counterclaim does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

**III.    Analysis**

    **A.     Tortious Interference with Existing Contract and Prospective Business Relations**

In Counterclaim I, Grenemyer asserts that Optum "used improper means" and "acted with

3

an improper motive to interfere with [his] potential treatment of patients." (Answer & Countercl. at 12 ¶¶ 44–45.) On its face, this counterclaim references both "existing contracts" and "prospective business relations," which are two distinct claims under New Mexico law. *See, e.g.*, *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CV 08-1101 JB/RLP, 2009 WL 10699130, at *5–6 (D.N.M. Sept. 11, 2009) (outlining elements of each claim). Optum asserts that claims for tortious interference of *existing* contracts do not apply to doctor-patient relationships because they are "at-will, and as such there is no existing contract at issue." (Doc. 29 at 17 (citing *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1285 (10th Cir. 2012); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 640 (10th Cir. 2008); *Kelly v. St. Vincent Hosp.*, 692 P.2d 1350, 1356 (N.M. Ct. App. 1984)).) Grenemyer does not respond to this point, other than to reiterate that Optum's conduct may "serve as the factual basis for tortious interference, whether existing or prospective." (Doc. 33 at 19.) The cases Grenemyer cites do not involve doctor-patient contractual relationships. (*See id.* at 19–21.[3]) Nor does he reference contractual relationships in Counterclaim I outside of doctor-patient relationships. (*See* Answer & Countercl. ¶¶ 43–46.)

In *Kelly*, the New Mexico Court of Appeals examined a physician's claim that a hospital "tortiously interfered with [the physician's] existing contractual relations with [his] patients." 692 P.2d at 1356. The *Kelly* court noted that New Mexico courts have adopted the Restatement (Second) of Torts Section 766B (1979). *Id.* "In comment g to Section 766, the Restatement discusses existing contracts which are terminable at will." *Id.* "An interest in a contract terminable

---

[3] He cites, for example, *N.M. Oncology & Hematology Consultants, Ltd v. Presbyterian Healthcare Services*, 54 F. Supp. 3d 1189, 1198 (D.N.M. 2014), where the court examined a claim for tortious interference of existing and prospective contract claims due to the "[d]efendants' alleged use of improper means to prevent and prohibit referrals to [the p]laintiff and out of [the d]efendants' alleged use of improper means to prevent [p]laintiff's patients from purchasing chemotherapy drugs from [p]laintiff and using [p]laintiff's chemotherapy infusion center." (*See* Doc. 33 at 18–19.) The only other medical-related case he cites in this section is *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 501 (3d Cir. 1998), a lawsuit that stemmed from the defendant's refusal to approve a new store's application for membership in defendant's "network of medical prescription providers." (*See* Doc. 33 at 19.) Neither case is on point.

4

at will is primarily an interest in future relations between the parties when the party has no legal assurance of the relation." *Id.* "For that reason, interference with these contracts is closely analogous to interference with prospective contracts." *Id.* The court found that the doctor-patient contracts "appear to be contracts at will" and only applied an analysis for tortious interference with *prospective* contracts to decide the claim. *Id.* As Grenemyer advances no argument to support a finding that Optum has interfered with anything but at-will doctor-patient relationships (*see* Doc. 33 at 18–20), the Court will follow *Kelly*'s lead and apply an analysis for tortious interference with prospective contractual relations. To the extent Grenemyer claims tortious interference with existing contractual relationships, the claim is dismissed.

Optum argues that to state a claim for interference with prospective relations, "Grenemyer must allege facts that, if true, would demonstrate the existence of an actual prospective contractual relation which, but for OptumCare's interference, would have been consummated." (Doc. 28 at 17 (citing *Anderson v. Dairyland Ins. Co.*, 637 P.2d 837, 84 (N.M. 1981)).) Grenemyer does not explicitly respond to this argument either. His Counterclaim refers only to Optum's use of "improper means" and its "improper motive to interfere with [his] potential treatment of patients." (Answer & Countercl. at 12 ¶¶ 44–45.) Grenemyer does not point to facts to establish that Optum's conduct has actually prevented him from treating patients. On the contrary, he asserts that he "is a family practitioner who has treated New Mexico patients for 23 years." (*Id.* at 7 ¶ 1.) Grenemyer fails to allege facts to show that Optum interfered with his prospective contractual relationships. Accordingly, the Court will grant Optum's motion on Counterclaim I.

  **B.**  **Common Law Unfair Competition**

Grenemyer alleges in Counterclaim II that Optum's conduct "constitutes common law unfair competition under the Restatement (Third) of Unfair Competition[,]" and both he "and New

Mexico patients (consumers of health care services) have been damaged by" Optum's conduct. (Answer & Countercl. at 12 ¶¶ 48–49.)

"New Mexico courts generally rely on the definition set forth in the Restatement (Third) of Unfair Competition § 1 (Am. Law Inst. 1995) to define the elements of a common law unfair competition claim." *Purvis Indus., LLC v. Spokane Indus., Inc.*, No. 18-CV-00585 RB-LF, 2019 WL 1992911, at *9 (D.N.M. May 6, 2019) (citing *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 54 F. Supp. 3d 1189, 1235–36 (D.N.M. 2014)). "The Restatement provides that '[o]ne who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless' the harm results from one of several enumerated sources, including deceptive marketing, trademark infringement, and misappropriation of trade values including trade secrets." *Id.* (quoting Restatement (Third) of Unfair Competition § 1(a)(1)–(3)). "In addition to these enumerated unfair practices, the Restatement also allows recovery under a 'residual category encompassing other business practices determined to be unfair.'" *Id.* (quoting Restatement (Third) of Unfair Competition § 1 cmt. g). "A claim under this residual provision is tied to harm resulting from 'other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public . . . .'" *Id.* (quoting Restatement (Third) of Unfair Competition § 1(a)).

Optum argues that the unfair competition counterclaim should be dismissed because it "is void of any reference to a particular common law claim falling under the Restatement (Third) Unfair Competition and therefore fails to give OptumCare sufficient notice of the claim(s) asserted against it." (Doc. 29 at 14.) Optum cites *Auge v. Striker Corp.*, Civ. No. 14-1089 KG/SMV, 2016 WL 3567047 (D.N.M. May 5, 2016), in support. In *Auge*, the plaintiff brought a claim for common

6

law unfair competition under the Restatement (Third) Unfair Competition, but the "[c]omplaint [was] void of any reference to a particular common law claim under the Restatement . . . ." 2016 WL 3567047, at *7. The court ordered the plaintiffs "to file an amended complaint indicating factual allegations and the common law at issue in" the count. *Id.* The Court agrees that Grenemyer fails, in his Answer and Counterclaim, to specify the basis for this counterclaim.[4] (*See* Answer & Countercl. at 12 ¶¶ 47–49.) Further complicating the matter, he fails to specify any factual allegations underpinning the claim, choosing instead to "incorporate[] the allegations" from the entire pleading and vaguely asserting that "[t]he conduct by Optum described above constitutes common law unfair competition . . . ." (Answer & Countercl. ¶¶ 47–48.)

The Counterclaim as written is insufficient to state a claim for relief, and the Court declines to fill in the gaps for Grenemyer. Should he decide to file a Second Amended Answer & Counterclaim to address this deficiency, he must file the pleading, specifying the section of the Restatement and the factual allegations in support of the claim, within **seven days** of this Opinion.

C. **New Mexico Antitrust Act**

The New Mexico Antitrust Act provides that "[e]very contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." NMSA § 57-1-1. Grenemyer asserts that Optum's attempts to enforce the NCA are illegal, anti-competitive, and "constitute[] an unlawful restraint of trade." (Answer & Countercl. at 13 ¶¶ 52–53.) Optum first argues that Counterclaim III, which is based on the 2012 NCA, is time-barred by the NMAA's four-year statute of limitations. (Doc. 29 at 8 (citing N.M. Stat. Ann. § 57-1-12).) A claim accrues under the NMAA when "the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim."

---

[4] Grenemyer's clarification in his response brief that he brings this "claim under the residual category" of the Restatement is insufficient to save the counterclaim under these circumstances. (*See* Doc. 33 at 14.)

7

*Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532, 539 (N.M. Ct. App. 2006) (citing N.M. Stat. Ann. § 57-1-12(B) ("applying discovery rule to antitrust claims"). Optum argues that Grenemyer's cause of action accrued in 2012 when he signed the purportedly unlawful agreement.[5] (Doc. 29 at 8.) Grenemyer makes no argument and cites no authority to rebut this assertion, and the Court declines to manufacture the argument on his behalf. The Court finds he has conceded that any claim based on the 2012 NCA is time-barred.

Grenemyer instead argues that his claim concerns "[t]he 2019 contract between DaVita and Optum attempting to bundle and sell a collection of 2012 physician noncompete agreements . . . ." (Doc. 33 at 8.) Critically, Grenemyer's argument regarding a 2019 contract is nowhere to be found in his Answer and Counterclaim. (*See* Doc. 20.) As such, he has not provided facts to support the grounds of his entitlement to relief.[6] *See Bell*, 550 U.S. at 556. The Court will grant the motion to dismiss Counterclaim III.

### D.   Malicious Abuse of Prosecution

Finally, Grenemyer asserts that Optum filed this lawsuit "without a reasonable belief in the validity of the allegations of fact or law underlying the complaint" and with the primary motive of "prevent[ing him] . . . from treating New Mexico patients outside of Optum's health system, among other illegitimate ends." (Answer & Countercl. at 13 ¶¶ 55–56.) He contends that this conduct has injured his reputation and caused financial loss and constitutes malicious abuse of process. (*Id.* ¶ 57.) New Mexico courts define the tort of malicious abuse of process as: "(1) the use of process

---

[5] An argument could also be made that Grenemyer had notice, at the latest, in 2015 when the state legislature "prohibited health care systems from imposing non-compete provisions on physicians practicing in the State of New Mexico." (*See* Answer & Countercl. at 10 ¶ 25; Doc. 33 at 9 (alleging a violation of the NMAA "when DaVita purported to sell and assign the 2012 [NCA] to Optum *after* New Mexico law had already banned such agreements").)

[6] Because Grenemyer fails to allege facts regarding any 2019 agreement selling the 2012 NCA, the Court also agrees with Optum that Grenemyer fails sufficiently to allege that "'two or more entities that previously pursued their own interests separately . . . combin[ed] to act as one for their common benefit' in the restraint of trade." (Doc. 29 at 9 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)).)

in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Harvey v. THI of N.M. at Albuquerque Care Ctr., LLC*, No. 12-CV-727 MCA/LAM, 2015 WL 12659914, at *8 (D.N.M. Mar. 31, 2015) (quoting *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009)). "[T]he malicious abuse of process tort is disfavored in the law because of the potential chilling effect on the right of access to the courts." *Id.* (quoting *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007)).

Only the first element is at issue. (*See* Doc. 29 at 6.) "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly actionable under the tort of abuse of process." *Durham*, 204 P.3d at 26 (quoting *Fleetwood*, 164 P.3d at 35). Grenemyer does not argue that Optum lacked probable cause. (Doc. 33 at 20.) Thus, he must base his claim on the second type of improper use of process—an irregularity or impropriety.

Grenemyer argues that Optum is only suing him "to accomplish an illegitimate end—to restrict competition[ and] to interfere with his business relations . . . ." (Doc. 33 at 20.) In other words, he asserts that Optum is only attempting to enforce the NCA to harass him. This allegation fits within the definition of an improper use of judicial proceedings (i.e., an impropriety suggesting harassment), and the Court will allow it to remain. Optum's motion is denied with respect to Counterclaim IV.

## IV. Conclusion

In sum, the Court finds that Grenemyer's counterclaims are generally conclusory and fail to provide factual allegations sufficient to plausibly support them. Moreover, he failed in several

respects to adequately respond to the arguments Optum set out in its motion. Accordingly, the Court will grant Optum's motion on three of the four counterclaims.

## V. Consolidation

The parties should notice that the Court's Opinion on this motion is strikingly similar to the Opinion it filed in a related case, *OptumCare Management, LLC v. Gutierrez-Barela*, No. 20-cv-00474 RB-SCY, 2022 WL 4079397 (D.N.M. Sept. 6, 2022). This is because Gutierrez-Barela and Grenemyer share an attorney, and their Counterclaims and the parties' briefs on Optum's motions to dismiss the counterclaims in both cases are nearly identical.

The Court directs the parties to discuss the propriety of consolidating these cases under Federal Rule of Civil Procedure 42(a) in order to expedite the proceedings and save judicial time and resources. Consolidation need not bind the cases through trial. The parties may wish to seek consolidation for limited purposes. For example, should Grenemyer seek to amend his counterclaims as Gutierrez-Barela already has, Optum may oppose the motion on the same grounds already at issue in 20cv00474. The Court directs the parties to confer and file either a joint motion to consolidate or their respective positions on such a motion within **14 days** of the entry of this Opinion.

**THEREFORE**,

**IT IS ORDERED** that Optum's Motion to Dismiss Counterclaims (Doc. 29), is **GRANTED in part**: the Court dismisses Counterclaims I–III. The motion is otherwise **DENIED**, and Counterclaim IV remains.

**IT IS FURTHER ORDERED** that if Grenemyer wishes to move to file a Second Amended Answer and Counterclaim, he must file his motion pursuant to D.N.M. LR-15.1 within **seven** days of the entry of this Opinion.

**IT IS FURTHER ORDERED** that the parties shall confer regarding consolidation and file either a joint motion to consolidate or their respective positions on such a motion within **14** days of the entry of this Opinion.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE